## Hooks, Appellant, *v.* Hooks.

Argued  May  4,  1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Ellsworth Jordan,* with him *George I. Minch,* for appellant.

*Delmont K. Ferree,* for appellee.

OPINION BY RHODES, J., September 30, 1936:

The appellant, Frank L. Hooks, instituted an action of divorce against his wife, the appellee, on the grounds of cruel and barbarous treatment and indignities to the person as to render his condition intolerable and life burdensome. The appellant was granted a divorce a vinculo matrimonii from his wife on December 26, 1924, and on the same day the court below ordered, adjudged, and decreed that he pay his former wife the sum of $7.50 per week as alimony. On December 6, 1935, the appellant presented to the court below his petition for rule to show cause why the order granting alimony should not be vacated. The respondent filed an answer, and a hearing was held and testimony taken. The court below, on December 21, 1935, modified the order of December 26, 1924, reducing the alimony to be paid from $7.50 per week to $30 per month. Appel-

lant filed exceptions to this order, which were argued before the court in banc. The court in banc, on February 21, 1936, rescinded the order of the court of December 21, 1935, and ordered and decreed the payment of alimony by the appellant to his former wife at $25 per month, but cancelled the arrearages due in the amount of $372.50. The exceptions filed to the latter order were dismissed, and this appeal followed.

Proceedings in divorce are statutory, and permanent alimony, one of its features, is purely a creature of statute law. *Kerr v. Kerr et al.*, 216 Pa. 641, 644, 66 A. 107, 108; *Moore v. Moore*, 64 Pa. Superior Ct. 192, 194. Early legislation in Pennsylvania made a distinction between the causes for a divorce at the suit of a wife, and those which justify a divorce at the suit of the husband (see *Gordon v. Gordon*, 48 Pa. 226, 235), and manifested no intention to place the husband and wife in the same position (see *Shoop's Appeal*, 34 Pa. 233, 235, and *Miles v. Miles*, 76 Pa. 357, 358). This distinction in the status of the parties was gradually modified, until women are virtually on an equality with men in the matter of divorce in this state.

The Act of March 13, 1815, 6 Smith's Laws 286, was a general divorce law. It was entitled, "An act concerning divorces," and repealed previous legislation. It provided for the granting of divorces a vinculo matrimonii, and made no provision for alimony. Under this act, for causes occurring after the marriage, there were only two which were sufficient to entitle the husband to a divorce: Adultery by the wife, and her wilful and malicious desertion. The Act of September 19, 1785, §10, 2 Smith's Laws 343, had provided for a divorce from bed and board, with alimony, for certain causes at the suit of the wife. The Act of February 26, 1817, 6 Smith's Laws 405, reenacted section 10 of the Act of 1785, but it made no alteration in the rights of the husband. The Act of May 8, 1854, P. L. 644, was the

first act of assembly thereafter to substantially change the existing condition and enlarge the rights of the husband. Until the Act of 1854, no matter how scandalous, barbarous, or brutal was the conduct of the wife, if she stopped short of adultery or desertion, the courts had no power to dissolve or relax the bond in favor of the husband.[1] This act extended the causes for divorce to two new grounds given to both husband and wife, and made a third ground peculiar to the husband. As to the latter it provided: "III. Where the wife shall have, by cruel and barbarous treatment, rendered the condition of her husband intolerable, or life burdensome: Provided, That in cases of divorce under this act, if the application shall be made on the part of the husband, the court granting such divorce, shall allow such support or alimony to the wife, as her husband's circumstances will admit of, and as the said courts may deem just and proper." However, the Act of 1854 did not give a husband a right to a divorce for all the causes for which a wife was entitled under the prior acts. It did not make the rights of the husband and wife equally extensive. This is evidenced by the following language from section 1 of the Act of 1815: "...... when any husband shall have, by cruel and barbarous treatment, endangered his wife's life, or offered such indignities to her person, as to render her condition intolerable and life burthensome, and thereby force her to withdraw from his house and family, ......"

The provision for permanent alimony to be awarded upon a divorce a vinculo matrimonii, granted upon a petition of a husband, first appears in the Act of 1854, although such a provision in connection with a divorce a mensa et thoro, granted upon a petition of a wife, appeared in the Act of 1785, and was reenacted by the Act of 1817. Under the Act of 1854, a decree of ab-

---

[1] See *Gordon v. Gordon,* 48 Pa. 226, page 230 (charge of the court below).

solute divorce was fatally defective unless alimony was allowed, as the husband's circumstances admitted, where the divorce was granted to the husband because of the cruel and barbarous treatment of the wife. *Miles v. Miles,* supra. This situation continued until the Act of June 25, 1895, P. L. 308, which amended clause 3, section 1 of the Act of 1854 to read as follows: "Section 3. Where a wife shall have, by cruel and barbarous treatment or indignities to his person, rendered the condition of her husband intolerable, or life burdensome: Provided, That in case of divorce under this act, if the application shall be made on the part of the husband, the court granting such divorce may allow such support or alimony to the wife as her husband's circumstances may admit of, and as said court may deem just and proper." The allowance of alimony by the court thereby became discretionary instead of compulsory, and indignities to the person of the husband as a ground for divorce was added. See *Ponthus v. Ponthus,* 66 Pa. Superior Ct. 257, page 259.

The Act of April 18, 1905, P. L. 211, made a further modification in favor of the equality of the husband and the wife by providing that, if the wife is the petitioner and has sufficient means, the courts may provide for the support of the insane husband, in the same manner as required for an insane wife, provided the insane husband has not sufficient estate in his own right for his support.

The Act of June 28, 1923, P. L. 886, amended section 1 of the Act of March 13, 1815, P. L. 150, so that either the husband or the wife could obtain a divorce for cruel and barbarous treatment or indignities to the person of the other, without distinction.[2]

The Act of April 4, 1925, P. L. 124, amended clause 3, section 1 of the Act of May 8, 1854, P. L. 644, as

---

[2] See *Gordon v. Gordon,* 48 Pa. 226, and *Jones v. Jones,* 66 Pa. 494.

amended by the Act of June 25, 1895, P. L. 308, by taking away the right of support or alimony to the wife as provided by those acts.

The Divorce Law, approved May 2, 1929, P. L. 1237 (23 PS §1 et seq.), makes no provision for permanent alimony as did the Acts of 1854 and 1895. By section 45 of the Act of 1929 (23 PS §45) the court has power to decree alimony for the support of an insane wife and to provide for the support of an insane husband. This section is virtually the same as clause d, section 1 of the Act of April 18, 1905, P. L. 211. Section 46 of the Act of 1929 (23 PS §46), provides for the granting of alimony pendente lite to a wife. Section 47 of the same act provides for the allowance of alimony to the wife in cases of divorce from bed and board. Section 75 of the Act of 1929 repeals absolutely all of the acts which we have herein mentioned, except a portion of the Act of 1815.

It is apparent that the legislative policy has been, more and more, to place husband and wife, in matters of divorce, in the same position,[3] and we are of the opinion that it is the present legislative intent to put all parties, to whom an absolute divorce is or has been granted, on the same basis. The Acts of 1925 and 1929 both imply that intention.

"A principle frequently applied in interpreting statutes is that 'the mention of one thing implies the exclusion of another thing: expressio unius est exclusio alterius. The affirmative description of the cases in which the jurisdiction may be exercised implies a negative on the exercise of such power in other cases. ......
The maxim is not of universal application, but is to be applied only as an aid in arriving at intention and not to defeat the apparent intention': R. C. L. §229, p. 981.

---

[3] See *Cunningham v. Cunningham,* 119 Pa. Superior Ct. 380, 181 A. 458.

"Another principle that is recognized in the interpretation of statutes is the following: 'When the design of the legislature is not clearly apparent, it is always to be presumed that a statute was intended to have the most reasonable and beneficial operation that its language permits. And when a statute is ambiguous in terms or fairly susceptible of two constructions, the injustice, unreasonableness, absurdity, hardship, or even the inconvenience which may follow one construction may properly be considered and a construction of which the statute is fairly susceptible may be placed on it that will avoid all such objectionable consequences and advance what must be presumed to be its true object and purpose': 25 R. C. L. §255, p. 1017": *Fazio v. Pittsburgh Railways Co.*, 321 Pa. 7, at pages 11, 12, 182 A. 696, at page 698.

Recent legislation has fully recognized the inconsistency between a decree in divorce, as in this case, which provides "that thereupon all and every of the duties, rights and claims, accruing to either the said Frank L. Hooks or the said Lillian Hooks at any time heretofore in pursuance of said marriage shall and do cease and determine, and the said Frank L. Hooks and Lillian Hooks shall severally be at liberty to marry again in like manner as if they had never been married," and the accompanying order which adjudges and decrees "that the said Frank L. Hooks shall from the date of this order pay to his wife the sum of $7.50 per week as alimony."

If the appellant was entitled to an absolute divorce as the result of the course of conduct of his wife, which the court granting the decree accepted as sufficient in law, then it is reasonable that he should be fully restored to the single state, as the decree provided, with no ensuing obligations to his former wife.

The testimony in the instant case, taken on the petition to strike off the order for alimony and the answer

thereto, shows that there was a change in the ability of the appellant to pay the alimony, and also a lack of necessity for the former wife to receive it. See *Karmany v. Karmany*, 71 Pa. Superior Ct. 308. The court below recognized this fact when it struck off the arrearages in the amount of $372.50, for which the appellant was in default, and reduced the payments from $7.50 per week to $25 per month. On the other hand, the former wife of the appellant had, for a year, been able to get along without his support, and maintained a bank account, having an average daily balance of more than $225. At the time of the hearing her balance was $311.88. She conducts a ten-room rooming house. Since his divorce on December 26, 1924, the appellant has paid the appellee, in compliance with the court's order of the same date, the sum of $4,037.50. There were no children by the first marriage. The appellant remarried in 1929.

Considering the facts in this case and the legislative intent manifested, we are of the opinion that the appellant should be relieved from any further payments of alimony to the appellee, from whom he has had an absolute divorce for ten years.

The order entered in this case is reversed, and the payment of alimony by Frank L. Hooks to Lillian Hooks is terminated. Appellant to pay the costs.